**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AUDIENCEVIEW TICKETING
CORPORATION,

     *Plaintiff,*

v.

                         Case No.: _____

DESERT STAR THEATRICS INC.

                         **DEMAND FOR JURY TRIAL**

     *Defendant.*

## <u>COMPLAINT</u>

Plaintiff AudienceView Ticketing Corporation ("AudienceView" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant Desert Star Theatrics Inc. ("Desert Star" or "Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1.      This action arises from Defendant's breach of its exclusivity and payment obligations under a written six-year ticketing-services agreement, and its subsequent anticipatory repudiation of that agreement.

2.      On October 14, 2024, Desert Star executed Order Form No. 00034675 with AudienceView, agreeing to license and exclusively use AudienceView's Unlimited ticketing solution for a six-year term and to pay the associated Service Fees. Desert Star thereafter breached its exclusivity obligation by using a competing ticketing provider, failed to pay invoices, failed to cure despite written notice and opportunity to do so, and ultimately repudiated the agreement by expressly refusing to perform and stating it must follow through with integration of a competing platform.

1

3.      AudienceView brings claims for breach of contract, anticipatory repudiation, and, in the alternative, unjust enrichment, and seeks damages of not less than $456,000, plus contractual late-payment charges, pre- and post-judgment interest, attorneys' fees and costs of suit.

## THE PARTIES

4.      Plaintiff AudienceView Ticketing Corporation is a corporation organized and existing under the laws of Canada, with its principal place of business at 200 Wellington Street West, 2nd Floor, Toronto, Ontario, Canada M5V 3C7. AudienceView provides enterprise ticketing, fundraising, and marketing software to live-event organizations.

5.      Defendant Desert Star Theatrics Inc. is a corporation organized and existing under the laws of the State of Utah, last renewed on February 5, 2026, with its principal place of business in Salt Lake City. Its registered agent is Michal J. Todd, 4861 S State Street, Murray, UT, 84107. Desert Star operates live-theater venues that sell tickets to performances and events.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a State (Utah) and a citizen of a foreign state (Canada), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant, and venue is proper in this District, because Section 8.9 of the Agreement (defined below) provides that the Agreement is governed by the laws of the State of New York and that the parties "irrevocably attorn to the exclusive jurisdiction of the courts located in New York City, New York." Defendant has

2

consented to personal jurisdiction and venue in this forum. AudienceView is registered to do business in New York.

**FACTUAL ALLEGATIONS**

*A.      The Agreement*

8.      On July 18, 2024, AudienceView prepared Order Form No. 00034675 for Desert Star. Desert Star's President, Michael Todd, signed the Order Form on October 12, 2024, and AudienceView's Chief Financial Officer, Gord Dyer, countersigned the Order Form on October 14, 2024 (the "Order Form").

9.      The Order Form, together with the AudienceView Terms and Conditions incorporated therein by hyperlink at https://audienceview.com/legal/terms-and-conditions/ (the "Terms and Conditions," and together with the Order Form, the "Agreement"), sets forth the complete contract between the parties. A copy of the Agreement and Terms is attached as **Exhibit A**.

10.      Under the Agreement, Desert Star agreed to license and use AudienceView's Unlimited ticketing solution (the "Services") for an initial term of six (6) years commencing on the date of last signature, October 14, 2024, and continuing through October 13, 2030 (the "Term"). Desert Star agreed to pay an Annual Subscription Fee of $76,000 per year, payable in monthly installments, with a Ticket Maximum of 150,000 tickets and a per-ticket fee of $0.68 for tickets exceeding the maximum. The Services were to be deployed at Desert Star's two venues: Desert Star Playhouse in Murray, Utah, and Silver Star Theater in Mesa, Arizona.

11.      Section 1.1 of the Terms and Conditions provides: *"Client will exclusively use the Services for all of its events, unless otherwise set out on the Order Form."* The Order Form does not provide any exception to this exclusivity obligation.

3

12.     Section 2.1 of the Terms and Conditions provides that the Service Fees are "non-cancelable" and "not subject to refund."

13.     Section 2.3 of the Terms and Conditions provides for a late-payment charge of 1.50% per month on unpaid amounts.

14.     Section 7.2 of the Terms and Conditions permits a party to terminate the Agreement for the other party's material breach if that breach is not cured within thirty (30) days after written notice.

15.     Section 7.3 of the Terms and Conditions provides that, if the Agreement is terminated as a result of Client's material breach, Client shall pay the remaining Service Fees for the balance of the Term.

16.     Section 8.9 of the Terms and Conditions provides that the Agreement is governed by the laws of the State of New York and that the parties irrevocably attorn to the exclusive jurisdiction of the courts located in New York City, New York.

17.     The total contractual value of the Agreement over the Term is not less than $456,000.

**B.     *Plaintiff's Performance***

18.     Following execution of the Agreement, AudienceView developed and prepared Desert Star's ticketing portal for go-live, completed implementation tasks, and devoted substantial resources to configuring the Services for Desert Star's two venues. Desert Star was engaged in the onboarding process.

19.     AudienceView has performed, or has stood ready, willing, and able to perform, all of its obligations under the Agreement.

4

20.     Desert Star thereafter ceased communication with AudienceView, failed to pay invoices due under the Agreement, and began using a competing ticketing provider known as "Center Stage" software, in violation of the exclusivity clause set forth in Section 1.1 of the Terms and Conditions.

**C.      *Defendant's Defaults and Repudiation***

21.     In breach of Section 1.1 of the Terms and Conditions, Desert Star has used a competing ticketing provider, Center Stage software, to sell tickets for Desert Star events, rather than exclusively using AudienceView's Services as required by the Agreement.

22.     On July 23, 2025, AudienceView, through its Corporate Counsel Adam Taylor, sent Desert Star a written Notice of Breach identifying: (a) breach of payment terms due to unpaid invoices, and (b) breach of the exclusivity clause in Section 1.1 due to Desert Star's use of another ticketing provider. The Notice offered two cure options and demanded a response within ten (10) business days.

23.     On August 19, 2025, AudienceView followed up with Desert Star, noting that no response to the Notice of Breach had been received and threatening formal proceedings.

24.     Desert Star failed to respond to the Notice of Breach or cure its defaults within thirty (30) days as required by Section 7.2 of the Terms and Conditions.

25.     On October 31, 2025, AudienceView's outside counsel, Potomac Law Group, sent a formal demand letter to Desert Star on behalf of AudienceView, offering an opportunity to settle the dispute and setting a response deadline of November 15, 2025.

26.     Desert Star failed to respond to the demand letter.

27.     Subsequent communications between AudienceView's account manager, David Luker, and Desert Star's President, Michael Todd, revealed that Todd admitted regret over

signing the Agreement and stated he felt pressured. Todd's concerns about the platform were based on misinformation received from an unidentified person at a National Dinner Theatre Association ("NDTA") meeting, rather than from AudienceView or Todd's own experience with the Services. Todd acknowledged that Desert Star had "ghosted" AudienceView.

28.     Desert Star's purported concerns about the Services, including alleged additional customer support costs, alleged inability to control its own websites, alleged incompatibility with financial accrual reporting, and an alleged requirement for AudienceView to be merchant of record, were based on misinformation from an unidentified third party, were never raised during the contracting process, do not constitute a breach by AudienceView, and do not excuse Desert Star's performance under the Agreement.

29.     On May 5, 2026, Michael Todd emailed AudienceView stating that he must "follow through with integration" of Center Stage software. That communication constitutes an express refusal to perform Desert Star's obligations under the Agreement and an acknowledgment of Desert Star's ongoing breach of the exclusivity clause.

30.     On May 14, 2026, and again on May 27, 2026 AudienceView gave Desert Star a final opportunity to respond and cure. Desert Star failed to respond.

31.     Desert Star has not paid the Service Fees required under the Agreement and has repudiated its remaining obligations to do so.

**D.     *Damages***

32.     As a direct and proximate result of Desert Star's breaches and repudiation, AudienceView has been damaged in an amount of not less than $456,000, representing the total contractual value of the Agreement over the Term, plus accrued and accruing late-payment

6

charges at 1.50% per month pursuant to Section 2.3 of the Terms and Conditions, together with any additional damages, interest, costs, and fees permitted by law or contract.

33.     In addition, Desert Star has received the benefit of AudienceView's implementation services, portal development, configuration, and reserved capacity, without paying the consideration required by the Agreement.

**COUNT I — BREACH OF CONTRACT**

34.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

35.     The Agreement is a valid and enforceable contract supported by mutual consideration.

36.     AudienceView has performed, or stood ready, willing, and able to perform, its obligations under the Agreement.

37.     Desert Star breached the Agreement by, among other things, (i) using a competing ticketing provider in violation of the exclusivity obligation in Section 1.1; and (ii) failing to pay Service Fees when due in violation of Section 2.1.

38.     Desert Star failed to cure its breaches within the thirty-day cure period under Section 7.2 after written notice.

39.     As a direct and proximate result of Desert Star's breaches, AudienceView has been damaged in an amount to be determined at trial, but not less than $456,000, plus contractual late-payment charges, interest, and costs.

**COUNT II — ANTICIPATORY REPUDIATION / BREACH**

40.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

7

41.     By his May 5, 2026 email, Michael Todd, on behalf of Desert Star, expressly refused to perform Desert Star's remaining obligations under the Agreement by stating that he must "follow through with integration" of Center Stage software, a competing ticketing platform. Desert Star's complete failure to pay any Service Fees, combined with its use of a competing provider and Todd's express refusal to perform, constitutes a clear, unequivocal, and definite repudiation of the Agreement.

42.     Desert Star's repudiation entitles AudienceView to treat the Agreement as breached and to pursue all remedies available at law and in equity, including recovery of the remaining Service Fees for the balance of the Term under Section 7.3 of the Terms and Conditions.

43.     As a direct and proximate result of Desert Star's anticipatory repudiation, AudienceView has been damaged in an amount to be determined at trial, but not less than $456,000, plus contractual late-payment charges, interest, and costs.

### COUNT III — UNJUST ENRICHMENT (IN THE ALTERNATIVE)

44.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein. This Count is pleaded in the alternative to Counts I and II.

45.     At Desert Star's request, AudienceView conferred substantial benefits on Desert Star, including implementation services, portal development, configuration of ticketing environments for Desert Star's two venues, reserved capacity, and the availability of AudienceView's Unlimited ticketing solution.

46.     Desert Star accepted and retained those benefits with knowledge of their value.

47.     It would be inequitable and unjust for Desert Star to retain those benefits without paying AudienceView the reasonable value thereof.

48. AudienceView is entitled to recover the reasonable value of the benefits conferred on Desert Star, in an amount to be determined at trial.

## JURY DEMAND

AudienceView demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AudienceView Ticketing Corporation respectfully requests that this Court enter judgment in its favor and against Defendant Desert Star Theatrics Inc., and grant the following relief:

A. Compensatory damages in an amount to be determined at trial, but not less than $456,000, plus all accrued and accruing Service Fees under the Agreement;

B. Contractual late-payment charges at the rate of 1.50% per month pursuant to Section 2.3 of the Terms and Conditions;

C. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

D. Attorneys' fees and costs of suit, to the extent recoverable by law or contract; and

E. Such other and further relief as this Court deems just and proper.

Dated: July 3, 2026                         Respectfully submitted,

*/s/ Susan M. Sajadi*
Susan M. Sajadi (NY Bar Code # 4438461)
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, DC 20006
Telephone: (917) 238-0990
ssajadi@potomaclaw.com